WO

JL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

JoAnn Croff,

    Plaintiff,

v.

State of Arizona, et al.,

    Defendants.

No.   CV-24-01732-PHX-SHD (CDB)

**ORDER**

   Plaintiff JoAnn Croff, who is represented by counsel, originally brought this case on behalf of the estate of Joshua Croff in Maricopa County Superior Court. On July 11, 2024, Plaintiff filed a Third Amended Complaint, naming the State of Arizona, former Arizona Department of Corrections, Rehabilitation and Reentry (ADCRR) Director David Shinn in his individual capacity, and Centurion of Arizona, LLC ("Centurion") as Defendants. (Doc. 1-1 at 8-32.) The next day, Centurion filed a Notice of Removal and removed the case to this Court. (Doc. 1.)

   Defendant Shinn has filed a Motion to Dismiss Plaintiff's § 1983 claims (Counts One and Three) and §§ 1985 and 1986 claim (Count Five) against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 24), and the State of Arizona has filed a Rule 12(b)(6) Motion seeking dismissal of Plaintiff's claim under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA) (Count Six) (Doc. 25). Defendants State of Arizona and Centurion filed Joinders in Defendant Shinn's Motion to Dismiss with respect to Count Five of the Third Amended Complaint. Defendant

Centurion also filed a Joinder in Defendant State of Arizona's Motion to Dismiss as to Count Six. (Doc. 27.) The Motions are fully briefed. (Docs. 38, 39, 44, 49.)

The Court will grant the Motions.

## I. Legal Standards

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## II. Third Amended Complaint

In the operative Third Amended Complaint (TAC), Plaintiff alleges the following relevant facts:

Joshua Croff ("Croff") was in ADCRR custody between September 28, 2021 and September 26, 2022. (TAC, Doc. 1-1 at 12 ¶ 21.) Croff's intake records reflect an entry for "gastric reflux without esophagitis" and "upset stomach," for which he was given omeprazole, a generic drug that is also sold under the brand name Prilosec. (*Id.* ¶ 50.) The intake notes indicated that Croff had enlarged lymph nodes. (*Id.* ¶ 53.)

On October 7, 2021, Croff was transferred to the Arizona State Prison Complex-

Lewis. (*Id.* ¶ 54.) Croff's records indicated a diagnosis of "gastric reflux without esophagitis" and that he was receiving omeprazole. (*Id.*)

Between September 28, 2021 and February 6, 2022, Croff lost 50 pounds. (*Id.* ¶ 56.) On February 6, 2022, Croff was hospitalized for an "untreated hernia." (*Id.* ¶ 57.) The hospital records noted an eight-month history of abdominal pain and "possible strangulation of chronic hernia." (*Id.* ¶ 58.) While Croff was at the hospital, doctors observed a 5.2 cm mass on his shoulder. (*Id.* ¶ 61.) Notes from the visit state, "Patient reports that [he] developed a large bump to his L clavicular region around 3 months ago." (*Id.* ¶ 62.) On February 22, 2022, Croff was diagnosed with Stage IV malignant melanoma on his abdomen and neck. (*Id.* ¶ 63.)

By July 29, 2022, the tumor had grown to 11.2 cm. (*Id.* ¶ 66.) ADCRR released Croff on September 26, 2022. (*Id.* ¶ 67.) Croff died from melanoma on October 9, 2022. (*Id.*)

In Count One, Plaintiff asserts a Fourteenth Amendment claim for violation of the right to familial society and companionship against Defendants Shinn, Centurion, and the unknown Defendants. (*Id.* at 23.) In Count Two, Plaintiff asserts a *Monell* claim against Defendant Centurion and the unknown Defendants. (*Id.* at 24.) In Count Three, Plaintiff asserts Eighth and Fourteenth Amendment claims for deliberate indifference to serious medical needs against Defendant Shinn, Defendant Centurion, and the unknown Defendants. (*Id.* at 26.) In Count Four, Plaintiff asserts a respondeat superior claim against Defendant Centurion and the unknown Defendants. (*Id.* at 27.) In Count Five, Plaintiff asserts a claim for conspiracy to violate the Eighth and Fourteenth Amendment under 42 U.S.C. §§ 1985 and 1986 against Defendant Shinn, Defendant Centurion, and the Unknown Defendants. (*Id.* at 28.) In Count Six, Plaintiff asserts a claim for violation of the ADA and the RA against the State of Arizona. (*Id.* at 29.) Plaintiff seeks general, special, and punitive damages, among other relief. (*Id.* at 32.)

. . . .

. . . .

**III. Defendant Shinn's Motion**

    **A. Facts Specific to Defendant Shinn**

Defendant Shinn was the ADCRR Director until January 1, 2023. In July 2021, Defendant Shinn testified in a bench trial in *Jensen v. Ryan*, CV-12-00601-PHX-ROS (D. Ariz.), a multi-year prisoner class action lawsuit in this District regarding prisoner medical care in ADCRR, that "Arizona prisoners often have greater access to health care than [Shinn] does as a private citizen, despite repeated court sanctions totaling millions of dollars and weeks of testimony from prisoners to the contrary." (TAC ¶ 80.) The Court in *Jensen* "found [Shinn's] testimony 'completely detached from reality' and 'Defendant Shinn [was] acting with deliberate indifference to the substantial risk of serious harm posed by ADCRR's health care system." (*Id.* ¶ 81.) Defendant Shinn's testimony in *Jensen* occurred while ADCRR and its contractors were failing to provide any treatment other than Pepcid for Croff's ongoing hernia and "swollen lymph nodes." (*Id.* ¶ 83.)

    **B. Section 1983 Claims (Counts One and Three)**

        **1. Legal Standards**

A suit against a defendant in his or her *individual* capacity seeks to impose personal liability upon the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). For a person to be liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A plaintiff may assert a claim against a supervisor "for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011). A supervisor may be liable if he "was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lemire v. Cal. Dep't of Corrs. and Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013) (quoting *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003)).

Supervisory liability is direct liability, which requires the plaintiff to allege that a

supervisor breached a duty to the plaintiff and was the proximate cause of the injury. *Starr*, 652 F.3d at 1207. A causal connection can be "an affirmative link" between a constitutional deprivation and "the adoption of any plan or policy by [a supervisor,] express or otherwise showing [his or her] authorization or approval of such misconduct." *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). In other words, a supervisor can be liable for creating policies and procedures that violated a plaintiff's constitutional rights. *See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

### 2. Parties' Arguments

Defendant Shinn argues that the TAC lacks specific factual allegations connecting him to Croff's cancer care and that Plaintiff fails to identify a policy for which Shinn was responsible that "unduly delayed [Croff's] cancer care." (Doc. 24 at 2, 6, 7.)

In her Response, Plaintiff asserts that it is unclear whether Shinn "claims that the Third Amended Complaint does not provide enough detail for him to defend this matter or if he is arguing that, as a matter of law, he cannot be sued." (Doc. 39 at 5.) Plaintiff contends that from the assertions in Shinn's Motion, "it appears that [] Shinn has more than enough information to defend against the allegations in the Complaint." She claims Shinn's arguments that Croff received some health care, and that Shinn had nothing to do directly with Croff's health care, are "more akin to summary judgment than Rule 12.". (*Id.*) Plaintiff further argues that the TAC "alleges facts that support an inference" that Defendant Shinn's "deliberate indifference to the medical needs of the people for whom he was responsible directly contributed to" Croff's death. (*Id.* at 7.) Plaintiff contends that "[a]t this early stage of the proceedings," she does "not need to show with great specificity how each Defendant contributed to the violation" of Croff's constitutional rights. (*Id.* at 8.)

In his Reply, Defendant Shinn argues that Plaintiff effectively concedes that Shinn had no direct involvement in Croff's cancer care. (Doc. 44 at 2.) Shinn contends that his testimony in *Jensen* cannot support his individual liability for any delay in Croff's medical treatment because *Jensen* had nothing to do with cancer care generally or Croff's case

specifically. (*Id.*)

### 3. Discussion

As an initial matter, several of the cases Plaintiff cites in her discussion of the relevant pleading standards predate *Iqbal* and *Twombly* and are therefore inapplicable to the extent that they are inconsistent with *Iqbal* and *Twombly*. (Doc. 38 at 3.) *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997), *implied overruling recognized in Gulden v. Consolidated World Travel Inc.*, CV-16-01113-PHX-DJH, 2017 WL 3841491, at *2 n.4 (D. Ariz. Feb. 15, 2017); *Balistreri*, 901 F.2d at 699, *overruling recognized by Gill v. Unknown Parties*, CV-18-00617-TUC-RM, 2019 WL 3973654, at *1 (D. Ariz. Aug. 22, 2019); *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). When measured against the current 12(b)(6) standard, as reflected in *Iqbal* and *Twombly*, Plaintiff's allegations do not state a claim against Defendant Shinn.

Plaintiff does not allege in the TAC that Shinn was personally aware of Croff's medical issues or treatment, and Shinn's testimony in *Jensen* cannot stand in for allegations of personal knowledge because the Court in *Jensen* did not make any conclusions of law with respect to Shinn's individual liability. It is not enough that Defendant Shinn was aware of general problems with the medical care provided to ADCRR prisoners. And it is not enough that the Court in *Jensen* concluded that Defendant Shinn was liable to the class members in his *official* capacity.

The cases Plaintiff cites in her Response are distinguishable. In *Preschooler II v. Clark County Board of Trustees*, 479 F.3d 1175 (9th Cir. 2007), the plaintiffs alleged that school officials were individually liable under § 1983 for their inaction in the training, supervision and control of a teacher who abused a preschooler. *Id.* at 1182. The amended complaint in that case "detail[ed] the allegations of abuse, the role of the School Officials, the knowledge and reporting duty of the officials, and their failure to report or take corrective action." *Id.* at 1183. The amended complaint further alleged that "the School Officials ratified a custom that subjected Preschooler II to an educational environment in which he was physically and emotionally abused, in part by failing to train special

- 6 -

education teachers, or to hire qualified individuals to work in special education classrooms," and that "the officials abdicated their duty to report and discipline [the teachers] when they first became aware of the alleged abuses." *Id.*

Plaintiff claims the TAC "asserts liability against Shinn that is comparable to the liability asserted against the school district superintendent" in *Preschooler II*. (Doc. 39 at 9.) Plaintiff contends that Shinn's "indifference set in motion the series of acts by others--here, abject failures in prison medical care, to include a pattern of delaying and denying care to inmates with deadly cancer" that resulted in Croff's death. (*Id.*) But unlike the amended complaint in *Preschooler II*, which contained specific allegations regarding the superintendent's personal knowledge of the teacher's abuse and involvement in the failure to take corrective action, the TAC here alleges no facts to support that Defendant Shinn was ever aware of Croff's medical condition, cancer diagnosis, or treatment. The TAC also does not allege that Shinn failed to train or supervise subordinates with respect to prisoners' medical care. *Preschooler II* does not support Shinn's individual liability.

Plaintiff also relies on *Mason v. Ryan*, CV-19-04987-PHX-DGC (MHB), 2019 WL 7293404 (D. Ariz. Dec. 30, 2019), to argue that Defendant Shinn's predecessor, "James" Ryan,[1] "attempted to avoid individual culpability for a prisoner's denial of medical care in a similar case . . . and failed." (*Id.* at 10.) In *Mason*, the plaintiff alleged that Ryan knew of the risk to Plaintiff's health and disregarded it so he could "reap financial gain by rec[ei]ving kickback checks/incentives"; continued to delegate his duty to profit-driven companies for his own personal financial gain, despite years of "proven deficiencies" when using "profit-driven companies"; "adopted polic[ie]s" and instructed Centurion to restrict care and medications prescribed by specialists; and "[a]t [his] direction[,] thr[ough] . . . adopted polic[ie]s," failed to treat Plaintiff's chronic pain as a serious medical need. *Id.* at *4. The Court determined that Plaintiff's allegations stated a claim against Ryan in his individual capacity. Here, Plaintiff alleges that ADCRR had a "pattern and practice of

---

[1] Defendant Shinn's predecessor was Charles L. Ryan.

delaying and denying necessary inmate medical care to save money." (TAC ¶ 11.) Even if that allegation is sufficient to attribute responsibility for the policy to Shinn, the TAC is still devoid of allegations connecting that policy to Croff's medical care. That is, Plaintiff does not allege any facts to support that any delay in Croff's diagnosis or treatment was *because of* Shinn's policy.

For the foregoing reasons, the Court will grant Defendant Shinn's Motion to Dismiss as to Plaintiff's § 1983 claims (Counts One and Three).

### C.   Section 1985 and 1986 Claim (Count Five)

In Count Five, Plaintiff asserts a conspiracy claim under 42 U.S.C. §§ 1985 and 1986. Plaintiff alleges that Defendants State of Arizona, Shinn, and Centurion engaged in a conspiracy to "intentional[lly] delay [and deny] . . . necessary medical care" for ADCRR prisoners "to save money." (TAC ¶ 113.) Plaintiff claims the acts in furtherance of the scheme include, but are not limited to, "[m]aintaining a policy of denying Arizona Department of Corrections inmates timely, appropriate cancer screening and treatment"; delaying Croff's life-saving cancer treatment; limiting Croff's cancer treatment based on cost and profit considerations; and failing to send Croff to an oncologist before February 6, 2022. (*Id.* ¶ 114.)

#### 1.   Legal Standards

Plaintiff does not identify which provision of § 1985 she relies on for her claim, but based on her allegations, the only plausible claim is based on § 1985(3).[2] To state a claim under § 1985(3), a plaintiff must allege facts to support (1) the existence of a conspiracy, (2) to deprive him of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and

---

[2] Under § 1985(1), a plaintiff must allege a conspiracy to interfere with, or prevent, a person from holding office, trust, or place of confidence under the United States. Section 1985(2) contains two clauses that give rise to separate causes of action--the first clause concerns access to federal courts." *Portman v. County of Santa Clara*, 995 F.2d 898, 908 (9th Cir. 1993), and the second bars conspiracies to obstruct the course of justice in state courts. *Kush v. Rutledge*, 460 U.S. 719, 725 (1983).

- 8 -

(4) a personal injury, property damage, or a deprivation of any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971). To justify relief under § 1985(3), there "must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102; *Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980).

To sufficiently allege a conspiracy, a plaintiff must allege specific facts showing that two or more persons shared an unlawful objective for the purpose of causing a plaintiff harm and took "some concerted action" in furtherance of that goal. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999) (internal quotations omitted). In other words, a plaintiff must allege facts to support there was "an agreement or 'meeting of the minds' to violate constitutional rights.'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citation omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* at 1541 (citation omitted). A court need not "accept as true allegations that . . . are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001); *see also Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (conclusory allegations of conspiracy did not state a § 1983 claim); *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient.").

Section 1986 imposes liability on an individual who "knows of an impending violation of [42 U.S.C. §] 1985 but neglects or refuses to prevent the violation." *Karim-Panahi*, 839 F.2d at 626. A claim can be stated under § 1986 "only if the complaint contains a valid claim under section 1985." *Id.*

### 2. Parties' Arguments

Defendant Shinn argues that Plaintiff does not "allege any conspiratorial act" by Shinn "connected to" Croff. (Doc. 24 at 7.) Defendant Shinn also asserts that Plaintiff's

conspiracy claim under § 1986 is time-barred.³ (*Id.* at 8.)

In response, Plaintiff contends "[t]he law does not require each individual conspirator to take an act in furtherance of the conspiracy to be liable for the conspiracy." (Doc. 39 at 12.) Plaintiff argues that Defendant Shinn's testimony in *Jensen* "ratif[ied] th[e] acts in furtherance of this conspiracy." (*Id.*) Plaintiff further asserts that federal courts have consistently concluded that "in a case involving a civil rights violation causing death, a 42 U.S.C. [§] 1986 claim accrues when the victim dies from the injury." (*Id.* at 13.)

In his Reply, Defendant Shinn argues that the TAC "contains no allegation of a conspiracy that mentions [] Shinn by name or identifies any action he took other than testifying in *Jensen*," and there is no other nexus between Shinn and the medical malpractice theory at the heart of Plaintiff's case. (Doc. 44 at 4.)

### 3. Discussion

Plaintiff's conspiracy claim fails because the TAC contains no facts that support the existence of an agreement or a meeting of minds between Shinn and any other named Defendant to violate Croff's constitutional rights. As discussed above, Plaintiff alleges no facts to support Shinn's personal involvement with any of Croff's medical care. Thus, Plaintiff has not alleged facts to support that Shinn participated at all in the misconduct alleged, much less that he did so to further a shared objective of causing Plaintiff harm and was motivated by an invidiously discriminatory animus. *See*, *e.g.*, *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929-30 (9th Cir. 2004) (affirming a motion to dismiss § 1983 and § 1985 claims where the plaintiff failed to discuss any agreement between the defendants).

Because Plaintiff fails to state a claim against any Defendant under § 1985, she cannot obtain relief under § 1986. *See Karim-Panahi*, 839 F.2d at 626. But even if Plaintiff had stated a claim under § 1985(3), her claim under § 1986 appears to be barred by the statute of limitations. The statute of limitations under § 1986 is one year. Plaintiff cites a

---

³ The State of Arizona and Centurion join Defendant Shinn's Motion to Dismiss as to the timeliness of the § 1986 claim but do not otherwise address Count Five.

- 10 -

non-binding district court case for the proposition that the statute of limitations for a § 1986 claim for wrongful death begins to run on the date of the decedent's death. *See Pollard v. United States*, 384 F. Supp. 304, 308 (M.D. Ala. 1974) (citing *Huey v. Barloga*, 277 F. Supp. 864, 875 (N.D. Ill. 1967)). But as Defendant Shinn points out in his Reply, the Ninth Circuit has concluded that a § 1986 claim accrues when a plaintiff first learns of the injury giving rise to the claim. (Doc. 44 at 5 (citing *Finch v. Whitehead*, 828 F. App'x 418, 419 (9th Cir. 2020))).

Croff learned he had been diagnosed with melanoma on February 22, 2022, and he was released from ADCRR custody on September 26, 2022. Based on the allegations in the TAC, the last possible date of any injury resulting from the purported conspiracy to deny Croff treatment for his melanoma was September 26, 2022. Plaintiff filed the original Complaint on October 9, 2023. Absent any basis for equitable tolling, which does not appear on the face of the TAC, Plaintiff's § 1986 claim appears to be barred by the statute of limitations.

For the foregoing reasons, the Court will grant Defendant Shinn's Motion to Dismiss as to Count Five.

**IV.    Defendant State of Arizona's Motion to Dismiss Count Six**

In Count Six, Plaintiff alleges that "[b]y its policies and practices," Defendant State of Arizona subjected Croff "to regular and systemic discrimination based on his disability," in violation of Title II of the ADA and section 504 of the RA. (TAC ¶ 121.) Plaintiff asserts "Defendants' demonstrated pattern and practice of failing to provide proper, timely medical care to inmates with potentially fatal cancers constitutes a failure to deliver services to those with special medical needs, in violation of Sect. 504 of the Rehabilitation Act." (*Id.* ¶ 123.) Plaintiff claims the State was aware Croff's "disability" and was "deliberately indifferent to accommodating his needs and providing him the services, programs and activities to which he was entitled and to providing a reasonable modification of its policies, practices and procedures." (*Id.* ¶ 125.)

. . . .

### A. Legal Standards

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The RA provides "identical remedies, procedures and rights." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018). Both the ADA and the RA apply in the context of correctional facilities and prohibit disabled prisoners from being excluded from participation in prisoner services, programs, or activities, including medical programs. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Pierce v. County of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008).

To prevail on a Title II ADA claim, a plaintiff must show that: "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017). A plaintiff can allege disability discrimination in the provision of prisoner services, programs, or activities under the ADA or the RA by pleading either (i) discrimination based on disparate treatment or impact, or (ii) denial of reasonable modifications or accommodations. *See Fortyune v. Am. Multi–Cinema, Inc.*, 364 F.3d 1075, 1086 (9th Cir. 2004).

Under the ADA, public facilities and entities must make reasonable accommodations to provide full and equal access to people with disabilities. Once an accommodation request is made, "the ADA imposes an obligation to investigate whether [the] requested accommodation is reasonable." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1136 (9th Cir. 2001). This investigation involves a "fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." *Fortyune*, 364 F.3d at 1083.

Title II of the ADA abrogates state sovereign immunity "insofar as it creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment." *United States v. Georgia*, 546 U.S. 151, 159 (2006). A plaintiff seeking monetary damages under the ADA "must prove intentional discrimination on the part of the defendant." *Duvall*, 260 F.3d at 1138 (9th Cir. 2001).

The Ninth Circuit Court of Appeals applies a deliberate indifference standard to determine whether a defendant intentionally discriminated against a plaintiff based upon a disability. *Id.* Deliberate indifference "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that [] likelihood." *Id.* (holding that the deliberate indifference "must be a result of conduct that is more than negligent") (citing *City of Canton v. Harris*, 489 U.S. 378, 389, 395 (1989)); *see also T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 467 (9th Cir. 2015) (a plaintiff seeking monetary damages under the ADA "must show that the defendant acted with intent to deny him the benefits of the public program or a reasonable accommodation").

The first element of the deliberate indifference test is satisfied when a plaintiff "has alerted the public entity to his need for accommodation" or where the need for accommodation "is obvious, or required by statute or regulation." *Duvall*, 260 F.3d at 1139. The second element requires "an element of deliberateness" and "must be a result of conduct that is more than negligent[.]" *Id.* (citations omitted) (noting that a public entity receiving a request for accommodation has a duty to investigate the request and determine "what constitutes a reasonable accommodation").

### B. Parties' Arguments

In its Motion, the State does not dispute that Croff was a qualified person with a disability within the meaning of the ADA/RA or that Croff was eligible to receive medical services while incarcerated. (Doc. 25 at 5.) The State moves to dismiss Plaintiff's ADA/RA claim because Plaintiff alleged only that Croff received inadequate medical care, not that medical services were withheld because of Croff's disability. (*Id.*) The State

1 contends that it did not know Croff had cancer until it was diagnosed on February 6, 2022,
2 and to the extent that his condition could or should have been recognized or diagnosed
3 before then, "those questions go to the adequacy of the medical care provided as opposed
4 to a denial of medical services on the basis of disability." (*Id.* at 5-6.)  The State asserts
5 that Plaintiff "offer[s] no evidence to suggest" that Croff was denied medical services after
6 February 6, 2022, "much less that such denial was because of his cancer." (*Id.* at 6.)  The
7 State argues the Court should reject Plaintiff's attempt to "import" the findings in *Jensen*
8 because, "[i]f ADCRR's lack of medical services was systemic and affected a broad swath
9 of inmates with a wide array of underlying conditions," then Plaintiff cannot establish that
10 Croff "suffered individualized discrimination on the basis of his specific disability." (*Id.*
11 at 8.)

12    In her Response, Plaintiff asserts that the TAC alleges that the State "maintained a
13 policy of 'regular and systemic discrimination,'" based on Croff's "disability." (Doc. 38
14 at 3.)  Plaintiff contends the "disability" is cancer, and the "regular and systemic
15 discrimination" is the "intentional policy of delaying and denying cancer care" to ADCRR
16 prisoners. (*Id.*)  Plaintiff argues that the TAC alleges that the State "maintained a policy
17 of not providing screening and delaying and denying cancer care as a cost-saving measure,"
18 and that Croff "fell victim to this policy." (*Id.* at 6.)

19    In its Reply, the State contends that even "[r]echaracterizing the allegations against
20 the State as engaging in the 'intentional practice of delaying and denying cancer care' . . .
21 cannot alleviate the fundamental problem," that is, that the underlying issue is the adequacy
22 of Croff's medical diagnosis and treatment, which is not grounds for relief under the ADA
23 or RA. (Doc. 49 at 1.)

24    **C.    Discussion**

25    Plaintiff fails to state an ADA/RA claim for money damages against the State of
26 Arizona because she does not allege any facts to support that the State intentionally
27 discriminated against Croff *because of* any disability.  Rather, Plaintiff's ADA/RA claim
28 is based on the State's alleged failure to diagnose and treat Croff's melanoma. "The ADA

prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical malpractice."), *overruled in part on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see Atayde v. Napa St. Hosp.*, 255 F. Supp. 3d 978, 1002 (E.D. Cal. 2017) (citing *Hughes v. Col. Dep't of Corr.*, 594 F. Supp. 2d 1226, 1241–42 (D. Colo. 2009) ("[C]ourts have distinguished between claims asserted under the ADA that allege that the medical treatment that a plaintiff received or had access to was inadequate, versus claims alleging that a plaintiff was discriminatorily precluded from access to medical treatment altogether.")).[4]

Here, Plaintiff's allegations demonstrate that Croff received some treatment for his medical conditions and therefore do not support an inference that Croff was wholly excluded from participation in or denied the benefits of the prison's services, programs or activities. And Plaintiff's claim that Croff was denied adequate treatment for his melanoma is not the type of harm that the ADA and RA were designed to remediate. *See O'Guinn v. Nev. Dep't of Corr.*, 468 F. Appx. 651, 653 (9th Cir. 2012) (holding that plaintiff's challenge to treatment he received for "handicapping condition" could not be properly brought under the ADA and RA) (quoting *United States v. Univ. Hosp., State Univ. of New York at Stony Brook*, 729 F.2d 144, 156 (2d Cir. 1984)); *cf. O'Guinn*, 468 F. App'x at 653 (affirming summary judgment in favor of defendants on ADA/RA claim where there was no evidence of "a total lack of treatment" and the plaintiff "fail[ed] to distinguish his claim

---

[4] The district court in *Atayde* noted the holding in *Simmons* that inadequate or negligent medical treatment alone does not constitute an unlawful failure to accommodate under the ADA or RA but stated that "[t]here is no clear guidance as to whether a plaintiff may ever state a failure to accommodate claim under the ADA or RA based on a correctional facility's failure to provide medical treatment for a disability." 255 F. Supp. 3d at 1001 (collecting cases in which federal courts identified ADA or RA violations where the denial of medical care is so extreme as to suggest discriminatory refusal to accommodate a disability-related need).

from other ADA claims that allege inadequate care"). Moreover, Plaintiff has failed to allege any facts regarding the care Croff received after his February 22, 2022 cancer diagnosis. Plaintiff therefore has not stated a claim based on an intentionally discriminatory failure to provide cancer treatment based on a policy of delaying and denying cancer care.

For the foregoing reasons, the Court will grant the State of Arizona's Motion to Dismiss.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant Shinn's Motion to Dismiss (Doc. 24), Defendant State of Arizona's Motion to Dismiss (Doc. 25), and the Joinders in the Motions to Dismiss (Docs. 27, 28).

(2) The Motions to Dismiss and Joinders (Docs. 24, 25, 27, 28) are **granted**.

(3) Defendants Shinn and State of Arizona are **dismissed without prejudice**.

(4) Counts Five and Six are **dismissed without prejudice**.

Dated this 4th day of September, 2025.

Honorable Sharad H. Desai
United States District Judge